IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| **JAZMIN WOODS,** <br> 510 N. Curlew Road <br> Salisbury, MD 21801 <br><br> *Plaintiff,* <br><br> v. <br><br> **VERIZON MARYLAND LLC,** <br> 1209 Orange Street <br> Wilmington, DE 19801 <br>   Serve: The Corporation Trust Inc. <br>       2405 York Road Suite 201 <br>       Lutherville Timonium, MD 21093 <br><br> *Defendant.* | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | **CIVIL CASE NO.:**_____ |

**COMPLAINT**

Plaintiff Jazmin Woods through counsel makes this Complaint against her former employer, Verizon Maryland LLC ("Verizon"), for race and gender discrimination and for retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"); for race discrimination and retaliation, pursuant to 42 U.S.S. § 1981 ("§ 1981"); and for race and gender discrimination and for retaliation pursuant to § 20-606 of the State Government (S.G.) Article of the Maryland Annotated Code ("MFEPA"). Verizon harassed Ms. Woods because she is a Black female, culminating in an assault by her White supervisor. Ms. Woods complained and Verizon then retaliated against her to the point where she was psychologically unable to do her job, whereupon Verizon fired her because she was unable to do her job. Ms. Woods seeks declaratory and injunctive relief, awards of compensatory and punitive damages, and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that this action asserts violations of rights secured by the laws of the United States. This Court has supplemental jurisdiction over Ms. Woods' state claims, which are pendant to her federal claims.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to the claim occurred in the District of Maryland, and there is no other district in which this action may be brought.

3. Prior to bringing this action, Ms. Woods timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination and retaliation. The EEOC issued Ms. Woods a Notice of Right to Sue dated February 5, 2020, a copy of which is attached as **Exhibit A**. She files this suit within ninety (90) days of the issuance of the Notice.

## PARTIES

4. At all times relevant to this Complaint, Ms. Woods, a Black female, was an employee of Verizon and a resident of Wicomico County, Maryland.

5. Verizon is a limited liability company organized under the laws of Delaware; it provides telephone communication goods, services, and products to residential and business customers and employs more than 5,000 employees in this State. Verizon was Ms. Woods' "employer" as defined by Title VII, § 1981, and MFEPA.

## FACTS COMMON TO ALL COUNTS

6. Ms. Woods was raised by a single mom, who abused drugs. She found herself pregnant at fifteen years old. Her baby's father was abusive, and, in one near fatal assault, he stabbed her twenty-eight times.

7. Despite these obstacles, Ms. Woods graduated from high school and started working at Verizon in 2011 as a sales representative at age 21.

8. Ms. Woods worked at the Salisbury, Maryland office on Mount Hermon Road.

9. Her duties included answering incoming calls from customers with order or billing inquiries, responding to request for products and services, and meeting sales objectives by defining customer needs and proactively offering Verizon products and services.

10. By all accounts, Ms. Woods excelled at her job and was able to support her children, earning $88,000 a year on the lower Eastern Shore of Maryland with a high school diploma.

11. By 2018, Ms. Woods had been ranked as a top ten sales representative in her district for sales and service, was "top-rated" by customers, and had won a host of sales and service contests.

12. However, Ms. Woods' unblemished career spiraled downward after she was assaulted at work by her supervisor, Robert Hill (White), and complained about the assault to Mr. Hill's superiors.

13. On June 12, 2018, Mr. Hill aggressively challenged Ms. Woods' veracity with respect to her overtime work schedule in front of her colleagues. This was not the first time Mr. Hill had spoken to Ms. Woods in a condescending and accusatory manner designed to embarrass her as a Black female.

14. Upset by Mr. Hill's actions, Ms. Woods immediately reported the incident to David Moore (White), the manager on duty.

15. Mr. Moore then summoned Ms. Woods and Mr. Hill into a conference room for a meeting. Mr. Moore forced Ms. Woods to recount her exchange with Mr. Hill while he was standing next to her. As she did, Mr. Hill lunged at her with his hands raised as if to hit her and yelled, "Sit the hell down" along with other expletives.

16. Mr. Moore had to jump to his feet to prevent Mr. Hill from reaching Ms. Woods and escorted Mr. Hill out of the conference room.

17. Ms. Woods had never seen Mr. Hill be aggressive toward or try to attack any other member of his team, who were all either White or male.

18. The sales department at the Salisbury office was divided into five teams with approximately twenty employees per team. Each team was led by one team leader.

19. Mr. Hill was Ms. Woods' team leader. As team leader, Mr. Hill "drafted" or chose the employees he wanted on his team. Mr. Hill chose primarily White employees. The only employees of color on Mr. Hill's team were two Black males and Ms. Woods. Mr. Hill chose Ms. Woods to be on his team only because she was one of the top performers; having Ms. Woods on his team meant Mr. Hill had the opportunity to make significantly more money.

20. Immediately after the assault, Ms. Woods filed an internal complaint with Verizon notifying Verizon officials she had been harassed and assaulted by Mr. Hill because she is a Black female.

21. Ms. Woods requested Verizon immediately remove her from Mr. Hill's supervision and reassign her to another team.

22. Ms. Woods took leave from work immediately following the assault and planned to remain on leave until she received a response from Verizon about her complaint and the relief she had requested. Mr. Hill's aggressive, unprovoked assault shook her very core, as it put in jeopardy her job Mr. Woods had worked so hard to secure and succeed at.

23. Accordingly, on June 19, 2018, Ms. Woods presented to her primary care physician ("PCP") complaining her job was "really stressing [her] out" and causing her anxiety. Ms. Woods was prescribed anxiety medication for the first time in her life.

24. On June 20, 2018, Dawn Parker (White), Verizon's manager to whom the team leaders reported, spoke to Ms. Woods by phone about the assault and Ms. Woods' request to be removed from Mr. Hill's supervision. Ms. Parker promised to reassign Ms. Woods to another supervisor.

25. On Ms. Parker's assurance, Ms. Woods returned to work.

26. On Ms. Woods' first day back, Ms. Parker told Ms. Woods she had "changed her mind" and Ms. Woods would continue to work under Mr. Hill.

27. Reassigning Ms. Woods to another team could have been easily accomplished. Verizon had transferred Cody Chesser (White), a sales representative, to another team, after Mr. Chesser complained he did not "like" his supervisor, who was a Black female.

28. Ms. Parker refused to remove Ms. Woods from Mr. Hills' team because she and Mr. Hill would earn less money.

29. Mr. Hill's harassment of Ms. Woods intensified following her complaint: Mr. Hill constantly tormented Ms. Woods by reprimanding her without justification, monitoring her every move (including her bathroom visits), and giving her poor (but inaccurate) performance reviews.

30. In the fall of 2018, Mr. Hill ordered Ms. Woods to unstack and load more than 200 computers because Ms. Woods reported she had bronchitis and could not speak on the phone. That same day, two White males on Mr. Hill's team reported they were sick and could not speak on the phone. Mr. Hill allowed those two employees to conduct trainings at their desk, but ordered Ms. Woods to unload and stack computer monitors.

31. On December 29, 2018, Mr. Hill retired.

32. Todd Vasy (White) inherited Mr. Hill's team and became Ms. Woods' new team leader.

33. Ms. Parker had promoted Mr. Vasy from sales representative to team leader in order for Mr. Vasy to fill the vacancy created by Mr. Hill's retirement. At the time of his promotion, Mr. Vasy had been employed by Verizon for just two years.

34. Mr. Vasy was close friends with Mr. Hill and Ms. Parker. He was aware Ms. Woods had complained to management and corporate officials about Mr. Hill's assault and subsequent mistreatment.

35. From the beginning, Mr. Vasy avoided Ms. Woods and remained aloof from her. Mr. Vasy refused to conduct counseling and development sessions with Ms. Woods, but conducted these same sessions with everyone else on the team.

36. On February 27, 2019, Mr. Vasy shouted at Ms. Woods for taking a short personal call about her daughter's serious medical condition. The school nurse had called Ms. Woods to report her daughter needed to be taken to the doctor immediately.

37. Ms. Woods had permission from Ms. Parker and the attendance manager to take the call and so informed Mr. Vasy. Upon hearing this, Mr. Vasy replied angrily, "I'm your boss. You need to get permission from me."

38. As Ms. Woods was logging out of work to attend to her daughter's medical needs, Mr. Vasy continued to yell at her as he followed Ms. Woods from her desk to the door. Mr. Vasy's aggression echoed Mr. Hill's misconduct, and awakened in her the fears and anxiety she had struggled to overcome.

39. Mr. Vasy's outburst toward Ms. Woods during an already stressful time caused Ms. Woods' anxiety to skyrocket. As a result, Ms. Woods' PCP restricted her from working through May 14, 2019.

40. At the time Ms. Woods was restricted from working, she had been diagnosed with major depressive disorder, anxiety, and insomnia, all of which could be attributed to Verizon's hostile work environment. Ms. Woods had never before been diagnosed with any of these serious physical and mental impairments.

41. Ms. Woods was granted short term disability benefits from March 7, 2019 through May 24, 2019 by Verizon's third-party administrator.

42. When Ms. Woods returned to work from her medical leave, she reported to a new team leader, John Webster (White).

43. Verizon did not reassign Ms. Woods to Mr. Webster. Instead, while Ms. Woods was on medical leave, there had been a team draft, and Ms. Woods was selected by Mr. Webster.

44. Mr. Webster was aware Mr. Hill had assaulted Ms. Woods and Ms. Woods had complained about the assault.

45. Upon arriving to work one early summer day, Ms. Woods found that every sales representative's desk had been moved upstairs except her desk. Ms. Woods' desk was the sole desk left downstairs.

46. Distraught by the isolation, Ms. Woods experienced a panic attack and called her PCP from work.

47. Ms. Woods' PCP restricted Ms. Woods from phone duties that day. In return, Mr. Webster ordered Ms. Woods to scrub all the desks, a measure designed to further belittle and ostracize her.

48. No White sales representatives or male sales representatives have been made to clean desks when they were restricted from phone duties.

49. Ms. Woods suffered from debilitating anxiety attacks after returning to work from medical leave. As Ms. Woods drove to work, she could feel her heart start to race and the palms of her to hands sweat. Before walking into work, Ms. Woods would sit in her car in Verizon's parking lot and cry. Ms. Woods was the sole provider of her family; she was raising her three children and a grandchild. Ms. Woods forced herself to go to work in order to provide for her family.

50. On July 16, 2019, Ms. Woods was threatened with termination because she was allegedly on "Step 4" of Verizon's attendance policy for being late the week prior.

51. Ms. Woods was a member of Local 2106 Communication Workers of America. Per the Collective Bargaining Agreement, any discipline for lateness and tardiness after "Step 1," must be documented with a union representative present. Ms. Woods was never told she had been placed on a "Step 2" or "3" of the discipline policy, and certainly never had a meeting with a union representative present.

52. In challenging Verizon's application of its disciplinary policy, Ms. Woods learned Ms. Parker had placed her on an "in lieu of suspension" in February 2019, five months prior. Apparently, Ms. Parker did not want Ms. Woods suspended from work for allegedly unapproved

absences and tardiness because of Ms. Woods' superior sales and service skills. The office had to meet a sales goal and Ms. Parker recognized it would be unable to do so without Ms. Woods working. Consequently, Ms. Parker suspended Ms. Woods and so noted Ms. Woods' personnel file, but never told Ms. Woods and had Ms. Woods report for work, despite the suspension. This was a blatant violation of Verizon's policy.

53. As Ms. Woods was trying to resolve these discrepancies, Mr. Webster yelled at Ms. Woods to get back to work.

54. Ms. Woods presented to her PCP later that day complaining of workplace stress and anxiety; her PCP restricted Ms. Woods from working through September 1, 2019.

55. Because Ms. Woods' mental health was not improving, even with increased medication, Ms. Woods presented to a psychiatrist on August 26, 2019.

56. At that time, Ms. Woods was having an average of four panic attacks a week and was sleeping excessively.

57. Ms. Woods' psychiatrist diagnosed her with post-traumatic stress disorder ("PTSD") as a result of Mr. Hill's assault and the ensuing hostile work environment following her complaint.

58. Ms. Woods' psychiatrist restricted Ms. Woods from working through October 30, 2019.

59. However, on August 31, 2019, Ms. Woods' leave under the Family Medical Leave Act expired.

60. On August 30, 2019 and September 12, 2019, Verizon sent letters to Ms. Woods claiming her absences were "unauthorized" and were putting her employment "at risk."

61. Consequently, on September 30, 2019, Ms. Woods requested an accommodation in the form of additional time off from work through October 30, 2019 and a transfer to a new office location.

62. Ms. Woods did not receive any response to her request for an accommodation until December 10, 2019, more than two months later.

63. Verizon responded only after Ms. Woods, through her attorney, had put Verizon on notice of her discrimination and retaliation claims, and after Ms. Woods had applied for and received unemployment benefits.

64. Ms. Woods had applied for unemployment benefits because she had not been paid by Verizon since July 16, 2019 and had received no communication from Verizon other than threats her employment was "at risk." According to Maryland's Department of Labor, Licensing, and Regulation, "during the week ending 10/26/19," Verizon "decided they [sic] could not continue to hold [Ms. Woods'] position,

65. On December 10, 2019, Ms. Woods received a call from Verizon's Workplace Accommodation Team, maintaining that Ms. Woods was still a Verizon employee, but notifying her that her request for an accommodation had been denied.

66. Verizon's Workplace Accommodation Team "summarized" its December 10, 2019 telephone conversation with Ms. Woods in a letter dated January 6, 2020. In that letter, Verizon formally notified Ms. Woods her request for an accommodation had been denied, and suggested Ms. Woods should be able to return to work because Mr. Hill had retired, ignoring the fact Verizon's mismanagement of the situation had caused my psychological disabilities.

67. Ms. Woods construed Verizon's January 6, 2020 correspondence as an offer of reemployment.

68. By email dated January 10, 2020, Ms. Woods notified Verizon's Workplace Accommodation Team she could not accept the offer of reemployment because, according to her psychiatrist, she could not return to working for Verizon. Mr. Hill's assault and the ensuing harassment had caused Ms. Woods physical and mental impairments precluding her from returning to that same environment.

69. By letter dated February 21, 2020, Verizon maintained that, because Ms. Woods did not return to work or request an alternative workplace accommodation, her employment was terminated, effective immediately.

70. Because of Verizon's toxic work environment, Ms. Woods suffers from PTSD, anxiety and depression.

71. Rather than resolving Ms. Woods' complaint of discrimination promptly and removing Ms. Woods from Mr. Hill's supervision, Verizon, through its management team, harassed, bullied, and demoralized Ms. Woods to the point she was psychologically unable to do her job, whereupon Verizon fired her because she was unable to do her job.

72. Verizon's discrimination and retaliation of Ms. Woods was intentional, malicious, and in reckless disregard of Ms. Woods' civil rights.

73. Verizon's harassment caused Ms. Woods physical and mental impairments. During the last year Ms. Woods was employed by Verizon, she suffered from frequent panic attacks, nightmares, and anxiety; her weight fluctuated rapidly; and she had persistent headaches.

74. Until Ms. Woods became employed by Verizon, her life had been marked by poverty and harsh conditions. However, she had persevered against daunting obstacles and had found overwhelming success working at Verizon. Ms. Woods endured Verizon's harassment and retaliation for almost a full year because she was proud of her accomplishments and knew it would

be virtually impossible to find comparable re-employment without relocating her entire family from the Eastern Shore.

75. Because of Verizon's hostile work environment, which culminated in her termination, Ms. Woods has suffered significant economic and non-economic losses, loss of prestige, and emotional distress accompanied by physical conditions.

## CAUSES OF ACTION

### COUNT I
### RETALIATION UNDER TITLE VII, § 1981 AND S.G. § 20-606

76. The facts alleged above are incorporated by reference.

77. Verizon, acting through its management officials, harassed Ms. Woods because she complained of race and gender discrimination after being assaulted by Mr. Hill.

78. Verizon's harassment caused Ms. Woods extreme anxiety and depression. She was clinically diagnosed with PTSD, prescribed medication, and forced to seek treatment from a psychiatrist because of Verizon's mistreatment.

79. Verizon's illegal conduct terrorized and demoralized Ms. Woods to the point she was psychologically unable to do her job, at which point Verizon fired her because she was unable to do her job.

**WHEREUPON**, Ms. Woods respectfully requests this Honorable Court grant the following relief:

A. Enter a judgment in favor of Ms. Woods and against Verizon for compensatory damages in the form of past and future lost salary and fringe benefits;

B. Enter a judgment in favor of Ms. Woods and against Verizon for punitive damages;

C.  Enter a declaratory judgment holding that the Verizon violated Ms. Woods' rights under the laws of the United States;

D.  Assess reasonable attorneys' fees and costs of suit in favor of Ms. Woods and against Verizon; and

E.  Grant Ms. Woods such other and further relief as the nature of her cause may warrant.

## COUNT II
## RACE DISCRIMINATION UNDER TITLE VII, § 1981 AND S.G. § 20-606

80. The facts alleged in paragraphs 1 through 75 above are incorporated by reference.

81. Ms. Woods was subjected to unwelcome harassment by Verizon officials that was both severe and pervasive because of her race. The harassment unreasonably interfered with Ms. Woods' work performance by creating an environment that was intimating, hostile, and offensive.

82. Verizon's illegal conduct terrorized and demoralized Ms. Woods to the point she was psychologically unable to do her job, at which point Verizon fired her because she was unable to do her job.

**WHEREUPON**, Ms. Woods respectfully requests this Honorable Court grant the following relief:

A.  Enter a judgment in favor of Ms. Woods and against Verizon for compensatory damages in the form past and future of lost salary and fringe benefits;

B.  Enter a judgment in favor of Ms. Woods and against Verizon for punitive damages;

C.  Enter a declaratory judgment holding that the Verizon violated Ms. Woods' rights under the laws of the United States;

D. Assess reasonable attorneys' fees and costs of suit in favor of Ms. Woods and against Verizon; and

E. Grant Ms. Woods such other and further relief as the nature of her cause may warrant.

## COUNT III
## GENDER DISCRIMINATION UNDER TITLE VII AND S.G. § 20-606

83. The facts alleged in paragraphs 1 through 75 above are incorporated by reference.

84. Ms. Woods was subjected to unwelcome harassment by Verizon officials that was both severe and pervasive because of her gender. The harassment unreasonably interfered with Ms. Woods' work performance by creating an environment that was intimating, hostile, and offensive.

85. Verizon's illegal conduct terrorized and demoralized Ms. Woods to the point she was psychologically unable to do her job, at which point Verizon fired her because she was unable to do her job.

**WHEREUPON**, Ms. Woods respectfully requests this Honorable Court grant the following relief:

A. Enter a judgment in favor of Ms. Woods and against Verizon for compensatory damages in the form of past and future lost salary and fringe benefits;

B. Enter a judgment in favor of Ms. Woods and against Verizon for punitive damages;

C. Enter a declaratory judgment holding that the Verizon violated Ms. Woods' rights under the laws of the United States;

D. Assess reasonable attorneys' fees and costs of suit in favor of Ms. Woods and against Verizon; and

E.   Grant Ms. Woods such other and further relief as the nature of her cause may warrant.

          /s/
ROBIN R. COCKEY, Federal Bar No.02657
ASHLEY A. BOSCHÉ, Federal Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax: 410-546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com
*Attorneys for Plaintiff*

# Exhibit A

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Jazmin Woods<br>1701 Jersey Road<br>Salisbury, MD 21801 | From: Baltimore Field Office<br>G.H. Fallon Federal Building<br>31 Hopkins Plaza, Suite 1432<br>Baltimore, MD 21201 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 531-2019-03246 | Phillip Hoefs,<br>Investigator | (410) 801-6712 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Rosemarie Rhodes_  2/5/2020

Rosemarie Rhodes,
Director

(Date Mailed)

Enclosures(s)

cc: Natasha Campbell
Director HR Compliance
VERIZON
One Verizon Way
VC34W453
Basking Ridge, NJ 07920

Ashley A. Bosche, Esq.
COCKEY, BRENNAN & MALONEY, P.C.
313 Lemmon Hill Lane
Salisbury, MD 21801